**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JEFFREY B. REEVES,**

      **Plaintiff,**

                                       **Case No. 2:21-cv-4167**
  **v.**                                    **JUDGE EDMUND A. SARGUS, JR.**
                                        **Magistrate Judge Chelsey M. Vascura**

**P&E LOGISTICS, INC.,** *et al.,*

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Defendants P&E Logistics, Inc., Ahab Alammar, Sami Salamah and Abrar Ali's (together, "P&E Logistics Defendants") Partial Motion to Dismiss (ECF No. 5) and Defendant Amazon.com Services LLC's ("Amazon") Motion to Dismiss (ECF No. 8). Plaintiff filed Responses in Opposition to the motions (ECF Nos. 13, 14) and Amazon replied (ECF No. 18). For the following reasons, P&E Logistics Defendants' Partial Motion to Dismiss is **GRANTED in part and DENIED in part** and Amazon's Motion to Dismiss is **DENIED without prejudice**.

**I.    BACKGROUND**

This case arises from Defendants' alleged discrimination, retaliation, and harassment of Plaintiff Jeffrey Reeves from April 2019 until his alleged constructive termination October 2020. (Am. Compl. ¶ 1, ECF No. 11.) Defendant P&E Logistics, Plaintiff's former employer, provides delivery services for Defendant Amazon. (*Id.* ¶¶ 5–6.) Defendant Ahab Alammar is the President and owner of P&E Logistics; Defendant Sami Salamah is the Senior Vice President of P&E Logistics; Defendant Abrar Ali is an Office Support Manager at P&E Logistics; and Defendant Dawn Drake is an Amazon ambassador to P&E Logistics. (*Id.* ¶¶ 7–10.)

1

### A.  Alleged Race Discrimination

According to the Amended Complaint, Plaintiff began working for P&E Logistics on April 5, 2019, as a delivery driver. (*Id.* ¶ 11.) During his employment, Plaintiff alleges that Defendants gave easier assignments to younger Caucasian female employees and Middle Eastern employees than to Plaintiff, who is an African American male. (*Id.* ¶ 15.) They also allegedly disciplined him more harshly for using profanity than Caucasian employees. On or about July 1, 2019, Plaintiff allegedly complained to Defendants about the unlawful treatment he and other African American employees were subjected to. (*Id.* ¶ 21.) In Autumn 2019, Plaintiff alleges that after he finished his deliveries for the day, he was told to rescue a stranded employee even though other Caucasian employees had finished their deliveries earlier and were available. (*Id.* ¶ 23.)

### B.  Alleged Mistreatment and Failure to Fix Equipment

Plaintiff further alleges that Defendants withheld bonuses from employees, arbitrarily altered employee pay structures, paid different employees more for the same job functions than others, and failed to advertise available positions to all employees. (*Id.*)

Plaintiff avers that there were multiple delivery vehicle safety issues such as broken turn signals, rearview cameras, and doors, as well as unsanitary working conditions that P&E Logistics failed to fix. (*Id.* ¶¶ 20, 29.) In one instance, Plaintiff's vehicle was inoperable and he had to return to P&E Logistics' facility to change vehicles, and then was forced to work extra hours without compensation. (*Id.* ¶ 30.) In another instance, Plaintiff was injured on a broken step getting into a vehicle. (*Id.* ¶ 22.) Plaintiff reported these issues to Defendants but they failed to address them. (*Id.* ¶¶ 20, 22.)

In February 2020, Plaintiff became ill and missed work for several days over the span of two weeks. P&E Logistics did not pay him sick leave for the second week because he did not

provide a doctor's excuse note. He alleges that he had not been required to provide a doctor's excuse for the first week but still received sick leave pay. (*Id.* ¶¶ 24–27.)

### C. P&E Logistics Accuses Plaintiff of Failing to Follow Procedures

In late February 2020, Plaintiff allegedly reported to P&G President Alammar and Vice President Salamah and that he and other employees felt as though they were working in "slave labor conditions." (*Id.* ¶ 33.) On March 2, 2020, P&G Logistics, Ahab Alammar, Sami Salamah, Dawn Drake, and Abrar Ali criticized the way Plaintiff was preparing his packages for delivery. (*Id.* ¶ 34.) Ms. Drake allegedly accused Plaintiff of creating a safety hazard and yelled at him to prevent him from performing his work. (*Id.*) Plaintiff avers that P&E Logistics suspended him based on Ms. Drake and Mr. Ali's false accusations and refused to provide him with information about his suspension. (*Id.* ¶¶ 35, 36.)

On or about April 27, 2020, Plaintiff alleges that Defendants falsely accused him of failing to properly log out of the online delivery system. He received employee coaching and his infraction was notated in his personnel file. Younger, Caucasian employees who also improperly logged out were allegedly not subject to coaching. (*Id.* ¶ 41.)

On May 2, 2020, Defendants P&E Logistics, Alammar, and Salamah accused Plaintiff of failing to properly check in his delivery vehicle. When Plaintiff questioned a younger, Caucasian employee in charge of vehicle check in about when the new process was instated, Alammar and Salamah became angry and accused him of insubordination. (*Id.* ¶ 46.)

### D. Plaintiff is Injured and Does Not Receive Pandemic Bonus

On or around May 29, 2020, a dog bit and severely injured Plaintiff while he was delivering packages. He was unable to work form May 29, 2020 to August 13, 2020. During that time, Amazon paid employees a bonus for working during the pandemic, but P&E Logistics withheld

Plaintiff's bonus pay. P&E also allegedly failed to pay their share of Plaintiff's health insurance and his health insurance was cancelled. (*Id.* ¶¶ 48–51.)

### E.  Plaintiff's Alleged Constructive Termination

In August 2020, Plaintiff claims that he discovered P&E Logistics was engaged in fraudulent activities that made them appear more efficient to Amazon. When Plaintiff questioned coworkers about this, Defendant Salamah reprimanded him and assigned him to work different hours that were inconvenient for him. (*Id.* ¶¶ 54–57.) He was unable to work those hours. On October 1, 2020, Plaintiff was allegedly constructively terminated. (*Id.* ¶ 58.)

### F.  Litigation

Plaintiff filed this action *pro se* in the Franklin County Court of Common Pleas on April 9, 2021, asserting state and federal claims for age discrimination, race discrimination, sexual harassment, retaliation, wrongful termination, constructive discharge, breach of implied contract and promissory estoppel, wage and hour violations, slander, libel, intentional infliction of emotional distress. (Notice of Removal, ECF No. 1.)

Defendants removed the case to Federal court on August 14, 2021. Thereafter, P&E Logistics Defendants filed a Partial Motion to Dismiss (ECF No. 5) and Defendant Amazon filed a Motion to Dismiss (ECF No. 8). Plaintiff filed an Amended Complaint (ECF No. 11) and Responses in Opposition to the motions to dismiss (ECF Nos. 13, 14). The motions to dismiss are ripe for review.

## II.  STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

### III.    P&E DEFENDANTS' MOTION TO DISMISS

The P&E Logistics Defendants, comprised of P&E Logistics, President Alammar, Vice President Salamah and Manager Ali, move to dismiss the following claims from the Amended Complaint: (1)Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act ("Title VII") claims; (2) implied breach of contract claim; (3) defamation claims; (4) intentional infliction of emotional distress claim; (5) claim for punitive damages; and (6) request for attorneys' fees. (ECF No. 5 at 1.)

#### A.  Discrimination and Retaliation Claims

Plaintiff asserts age discrimination claims under the ADEA and R.C. 4112. He asserts race and sex discrimination and retaliation claims under Title VII, R.C. 4112, and 42 U.S.C. §1981. P&E Logistics Defendants move to dismiss the claims for three reasons.

##### 1.  No Individual Liability Under ADEA, Title VII, or R.C. 4112

First, P&E Logistics Defendants argue that Plaintiff's ADEA and Title VII claims must be dismissed against Defendants Alammar, Salamah, and Ali because those statutes do not permit individual liability. (ECF No. 5 at 4.) The Court agrees. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (noting that individuals who do not qualify as "employers" may not be held liable

5

under the ADEA or Title VII); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000).

Plaintiff's R.C. 4112 claims against the individual defendants are also dismissed because Ohio law prohibits individual liability for employment discrimination or retaliation. R.C. 4112.08 ("no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment…against a supervisor, manager, or other employee unless that [person] is the employer.").[1] Therefore, Plaintiff's Title VII, ADEA, and R.C. 4112 claims are dismissed against Defendants Alammar, Salamah, and Ali.

### 2. Plaintiff Exhausted His Administrative Remedies

Second, P&E Logistics Defendants argue that Plaintiff's discrimination claims must be dismissed because he failed exhaust his administrative remedies before bringing claims under ADEA and Title VII. It is true that Plaintiff did not file or attach his EEOC right to sue letter before Defendants filed this motion to dismiss. However, Plaintiff attached the right to sue letter in his Response in Opposition to the motion to dismiss. (*See* ECF No. 14 at 21.)

This Court will consider the right to sue letter attached to Plaintiff's opposition because courts are more lenient towards to *pro se* plaintiffs and prefer to determine cases on the merits rather than issues of procedure. *See Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, n.1 (S.D. Ohio March 8, 2010) (accepting and considering a plaintiff's right-to-sue letter attached to his response in opposition to a motion for judgment on the pleadings even though it was not attached to the complaint.)  Additionally, P&E Logistics Defendants had an opportunity to reply to Plaintiff's opposition memorandum with the right-to-sue letter but did not reply.

---

[1] In 1999, the Supreme Court of Ohio established individual liability for supervisors and managers under R.C. 4112.01(A)(2). *Genaro v. Cent. Trans. Inc.*, 84 Ohio St.3d at 296, 703 N.E.2d 782 (1999). On April 15, 2021, under the Employment Law Uniformity Act, Ohio House Bill 352 amended the R.C. 4112 to remove individual liability for managers and supervisors. *See* R.C. 4112.08.

Plaintiff's attached right-to-sue letter states that Plaintiff had ninety (90) days from May 17, 2021 to file a civil action against P&E Logistics. (Right to Sue Letter, ECF No. 14, Ex. A.) Plaintiff timely filed his Complaint in the Franklin County Court of Common Pleas on April 9, 2021. (*See* Notice of Removal, ECF No. 1 at 1; ECF No. 14 at 8.) Thus, Plaintiff exhausted his administrative remedies.

### 3. §1981 Prohibits Race Discrimination in Contracts

Third, P&E Logistics Defendants argue that Plaintiff's §1981 sexual harassment claim fails because § 1981 is limited to race, color, or ethnicity. (ECF No. 5 at 4 n. 1.) The Court agrees and dismisses the §1981 sexual harassment claim. *See Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001) (noting that §1981 prohibits race discrimination in the making and enforcing of contracts).

In sum, Defendants' motion to dismiss Plaintiff's discrimination and retaliation claims is **GRANTED in part and DENIED in part**. The following claims are dismissed: ADEA, Title VII, and R.C. 4112 claims against Defendants Alammar, Salamah, and Ali; §1981 sexual harassment claims against all the P&E Logistics Defendants. Plaintiff may proceed with his §1981 race discrimination, Title VII, and ADEA, and R.C. 4112 claims against P&E Logistics and his §1981 race discrimination claims against Defendants Alammar, Salamah, and Ali.

### B. Breach of Contract Claims

P&E Logistics Defendants move to dismiss Plaintiff's breach of contract claim on the grounds that the employee handbook contains an express contractual disclaimer, and Plaintiff does not allege any oral assurances that suggest alterations to his at-will employment. (ECF No. 5 at 6–7, 15.)

The Amended Complaint alleges that P&E Logistics Defendants breached their implied contractual obligations to Plaintiff by "failing to adhere to its policies governing discrimination, employment relations, discipline, evaluations done of Plaintiff, oral representations made to Plaintiff, and its customs and practices…" (Amend. Compl. ¶ 103.) Plaintiff also alleges that he "relied to his detriment" on P&E Logistics' assurances and believed that "his employment was secure so long as he performed his job, that discipline and discharge was subject to procedural steps and safeguards and that discharge would only be for just cause" and that he "satisfied the implied contract agreement by fulfilling his employment responsibilities. . ." (*Id.* ¶¶ 104–05.)

The Court finds that Plaintiff did not plausibly allege a breach of contract claim because his allegations are unsupported legal conclusions and the employee handbook was not an enforceable contract. (*See* Am. Compl. ¶¶ 103, 104, 106, 107.) Plaintiff does not allege what oral promises P&E Logistics or its employees made to him that altered his at-will employment contract.[2] Furthermore, employee handbooks are generally not enforceable contracts unless there was a "meeting of the minds" so that the employer and employee understood the handbook to contribute to the terms of employment. *See, e.g.*, *Green v. Fidelity Investments*, No. 1:07cv109, 2009 WL 366607, *6 (S.D. Ohio Feb. 11, 2009); *McNeil v. Medcentral Health Sys.*, 5th Dist. Richland No. 2008CA0104, 2009-Ohio-3389 ("As a general rule in Ohio, employee handbooks do not constitute an employment contract"); *Wiencek v. Continental Airlines, Inc.*, 8th Dist. Cuyahoga No. 90812, 2008-Ohio-5130 ("Personal manuals may be important in establishing the terms and conditions of employment," but they "are not contracts unless the parties manifest an intent to be

---

[2] Even where plaintiffs allege specific statements by employers that they would have a job so long as they performed well, courts usually find that those statements did not alter the at-will employment contract. *See, e.g.*, *Kiraly v. Office Max, Inc.*, 8th Dist. Cuyahoga No. 91311, 2009-Ohio-863 (rejecting employee's breach of implied contract claim despite employer's statement that he could expect to be employed "a long time"); *Shetterly v. WHR Health Sys.*, 9th Dist. Medina No. 08CA0026-M, 2009-Ohio-673.

bound."); *McMillen v. Trumbull Metro. Housing Auth.*, 11th Dist. Trumbull, 2007-Ohio-3713, 2007 WL 2080277, at *5 (finding that an employee handbook did not constitute a valid contract, particularly where the handbook contained a disclaimer explicitly stating that the terms therein were not to be considered as creating terms or conditions of an employment contract).

P&E Logistics' employee handbook states that it is "not a contract of employment," it "does not in any way alter the status of employees, which is "at-will," and "the company reserves the right to make a decision which is inconsistent with the provisions of this handbook. . ." (ECF No. 5-1 at 2.) Thus, P&E Logistics' employee handbook did not create an implied contract because it contained an express contract disclaimer. P&E Logistics Defendants' motion to dismiss Plaintiff's breach of contract claims against them is **GRANTED**.

### C. Slander and Libel Claims

P&E Logistics Defendants move to dismiss Plaintiff's slander and libel claims on the basis that they are time-barred by Ohio's one-year statute of limitations applicable to defamation claims. (ECF No. 5 at 8.) Plaintiff does not respond to statute of limitations argument. (ECF No. 14 at 17.)

The applicable law provides that "[a]n action for libel [or] slander… shall be commenced within one year after the cause of action accrued." R.C. § 2305.11(A). "[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238, (10th Dist. 2001). Plaintiff filed this suit on April 9, 2021. He alleges the Defendants made defamatory statements on or around March 2, 2020. (Am. Compl. ¶¶ 119, 125, 131, 137, 143, 149, 155, 161.) The alleged defamatory words were spoken more than one year before this action was filed in court, past the statute of limitations date. P&E Logistics Defendants' motion to dismiss the slander and libel claims is **GRANTED**.

9

**D. Intentional Infliction of Emotional Distress Claims**

P&E Logistics Defendants claim that Plaintiff fails to plead sufficient facts that, even if taken as true, would support an intentional infliction of emotional distress claim. (ECF No. 5 at 8.) Plaintiff's Response in Opposition does not defend this claim. It contains a header labeled "Plaintiff Has Successfully Pled Sufficient Facts With Regard To His Claim For Intentional Infliction of Emotional Distress," but the content beneath argues in support of his slander and libel claims. (ECF No. 14 at 16.) Even if Plaintiff defended this claim, it would fail.

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Kerr v. Hurd*, 694 F. Supp. 2d 817, 846 (S.D. Ohio March 15, 2010) (citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

A trial court may dismiss a claim for intentional infliction of emotional distress where the alleged conduct does not, as a matter of law, reach the level of "extreme and outrageous" conduct. *See Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 10 OBR 485, 462 N.E.2d 392 (1st Dist. 1984). That is the case here. The applicable part of the Amended Complaint alleges that Defendants,

> improperly disciplined Plaintiff, discriminated against Plaintiff, harassed, retaliated against Plaintiff for engaging in protected activity, slandered and libeled Plaintiff, and ultimately constructively terminated Plaintiff for reasons based upon his age, race and sex and for other reasons contrary to law and that Defendants knew or should have known that its conduct would cause Plaintiff serious emotional harm.

(Am. Compl. ¶ 167.) In other parts of the Complaint, Plaintiff alleges that Defendants gave Plaintiff more tasks to complete, disciplined him more harshly, failed to fix his vehicle and equipment, falsely accused him of logging his time and checking in his equipment incorrectly, refused to pay him sick leave, and eventually terminated him, all because of his age or race.

When taking these allegations as true and reading them in a light most favorable to Plaintiff, this conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society." *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983) (quoting Restatement (Second) of Torts, § 46). Although Plaintiff represents that Defendants' behavior was motivated by his race, age or sex, "[a]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375–76 (6th Cir. 1999). P&E Logistics Defendants' motion to dismiss the intentional infliction of emotional distress claims against them is **GRANTED**.

### E. Punitive Damages

P&E Logistics Defendants argue that Plaintiff's request for punitive damages in Count XVI of the Amended Complaint must be dismissed because in Ohio a request for "punitive damages" is not an independent cause of action. *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-CV-01575, 2010 WL 816344 (N.D. Ohio Mar. 4, 2010); *Bishop v. Grdina*, 20 Ohio St.3d 26, 28, 485 N.E.2d 704 (1985) ("No civil cause of action in this state may be maintained simply for punitive damages."). Furthermore, Defendants contend that Plaintiff does not plead allegations showing "actual malice," an essential element for punitive damages. Because Plaintiff does not respond to

this argument,[3] and the Defendant's arguments are well-taken, P&E Logistics Defendants' motion to dismiss the punitive damages claims against them is **GRANTED**.

### F. Attorneys' Fees

Finally, P&E Logistics Defendants move to dismiss Plaintiff's request for attorneys' fees. (ECF No. 5 at 11.) Plaintiff responds that he has incurred legal fees for bringing this action. (ECF No. 14 at 18.) Plaintiff's incurred expenses, however, are not attorney fees and *pro se* plaintiffs, who are not themselves attorneys, are not entitled to attorneys' fees. *See Freeman v. Wilkinson*, 65 Ohio St. 3d 307, 309, 603 N.E.2d 993 (1992) (denying award of attorney fees to pro se litigant); *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (noting that circuit courts agree that *pro se* litigants are not entitled to attorneys' fees). P&E Logistics Defendants' motion to dismiss the attorneys' fees claims against them is **GRANTED**.

### III.    AMAZON'S MOTION TO DISMISS

Defendant Amazon argues that it is entitled to dismissal because the Complaint fails to plead allegations sufficient to render Amazon a proper defendant in this action. (ECF No. 8 at 5.) Amazon contends that Plaintiff's dispute is with his employer, P&E Logistics, and his allegations do not establish that Amazon was involved in any harassment, discrimination, or breach of contract. Additionally, Amazon asserts that Plaintiff's allegations do not establish an agency relationship between Amazon and P&E Logistics that would make it liable for P&E Logistics' conduct.

The Amended Complaint does not allege that Amazon is directly liable for discrimination, harassment, retaliation, defamation, breach of contract, or other claim. Instead, Plaintiff alleges

---

[3] A plaintiff's failure to oppose an argument raised on a motion to dismiss is a concession of that argument and an abandonment of the associated claim. *See Hess v. City of Huber Heights*, No. 3:13-cv-312, 2014 WL 3341346, at *5 (S.D. Ohio July 8, 2014); *Viola v. Ohio Attorney General*, No. 1:20-cv-765, 2021 WL 510746, at *22–23 (N.D. Ohio Feb. 11, 2021) (applying the same to a *pro se* plaintiff).

after each claim that Defendant Amazon is a principal of P&E Logistics and "knew or should have known of the unlawful and discriminatory acts" of the P&E Logistics Defendants, and that Amazon "did not take any steps to stop the unlawful activity of its agent as set forth herein." (*See, e.g.*, Amend. Compl. ¶¶ 99, 112, 117, 123, 129, 135, 141.) Defendant argues, and the Court agrees that these general allegations are insufficient to create an agency relationship.

In his Response in Opposition, however, Plaintiff includes additional allegations that Amazon controlled P&E Logistics' operations including the delivery process, routes, and service partners and agents. (ECF No. 13 at 3–5.) He alleges that Amazon required the P&E Logistics drivers to deliver packages from Amazon, wear uniforms with the Amazon logo, and drive trucks with the Amazon logo. He alleges that when P&E Logistics employees disciplined or criticized him, they told him they were just following Amazon's directions because they wanted to remain its service delivery partner. Plaintiff also alleges that Amazon monitored P&E Logistics drivers' package delivery speed. If a driver failed to properly log out, Amazon contacted P&E Logistics and recommended or issued discipline to the driver. (*Id.*)

Defendant argues that the Court should not consider the new allegations in Plaintiff's Response in Opposition as they were not pled in the Complaint or Amended Complaint. (ECF No. 18 at 1.)

Federal Rule of Civil Procedure 15(a)(2) provides that the court should freely give leave to amend a pleading "when justice so requires." Courts often allow *pro se* plaintiffs to amend their complaint, on motion or *sua sponte*, if the plaintiff includes new factual allegations in an opposition memorandum that allege factually coherent claims. *See Nash v. Georgetown Police Dep't*, No. 1:13cv741–HJW, 2014 WL 794761, at *1 (S.D. Ohio Feb. 27, 2014) (citing Fed. R. Civ. P. 15(a)(2)); *Barrow v. Westrock, Inc.*, No. 1:19-cv-1089, 2021 WL 122985, at *2 (S.D. Ohio

Jan. 13, 2021) (permitting a Plaintiff to amend his complaint and add the new factual allegations from his opposition memorandum because his new allegations state a facially plausible claim for a violation under Title VII and ADA); *Brown v. Matauszak*, 415 F. App'x 608, 615 (6th Cir. 2011) (the Sixth Circuit has recognized that "at least three circuits have held that if a complaint is vulnerable to a motion to dismiss, a district court must first permit the plaintiff to file a curative amendment, even if the plaintiff does not seek leave to amend."). However, if the amendment would be futile and the claim would not survive a motion to dismiss, the Court need not grant amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The Court will grant Plaintiff leave to amend his Complaint because, when reading the allegations from Plaintiff's Amended Complaint together with his Response in Opposition in a light most favorable to him, and drawing all inferences in his favor, the allegations state a facially plausible claim for Amazon's liability on the grounds that there is an agency relationship between P&E Logistics and Amazon.

"An agency relationship between two parties is contractual in nature and may be express or implied." *Trimble-Weber v. Weber*, 119 Ohio App. 3d 402, 407 (1997). To plead an agency relationship, whether based on actual or apparent authority, a plaintiff must allege that: "(1) the defendant made representations leading the plaintiff to reasonably believe that the would-be agent operated under the defendant's authority and (2) the plaintiff was induced to rely on the ostensible agency relationship to his detriment." *See Wells Fargo Fin. Leasing Inc. v. Gilliland*, 2006-Ohio-2756, ¶ 30; *Murray v. Choice Energy, LLC*, No. 1:15-cv-60, 2015 WL 4204398, at *5–6 (S.D. Ohio July 10, 2015).

Here, Plaintiff alleges that Amazon controlled aspects of P&E Logistics' uniforms, equipment, schedules, discipline, delivery speed, and employee logging out procedures. He alleges that these actions, along with P&E Logistics employees' representation that they were just following Amazon's directions, led him to reasonably believe that P&E Logistics acted the way it did against him at least in part because of Amazon. These allegations, when taken as true, suggest that Amazon exercised a "right of control" over P&E Logistics' actions and that those actions were "directed toward the attainment of an objective which [Amazon] seeks"—delivering Amazon packages. *See Hanson v. Kynast*, 24 Ohio St. 3d 171, 173, 494 N.E.2d 1091, 1094 (1986).

Therefore, the Court **GRANTS Plaintiff leave to amend** his Complaint to add factual allegations to his claims against Amazon **within 30 days** of this Order; if Plaintiff does not amend his complaint, then the claims against Amazon shall be dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, P&E Logistics Defendants' Partial Motion to Dismiss (ECF No. 5) is **GRANTED in part and DENIED in part**. Amazon's Motion to Dismiss (ECF No. 8) is **DENIED without prejudice**. The following claims are dismissed: ADEA, Title VII, and R.C. 4112 claims against Defendants Alammar, Salamah, and Ali; §1981 sexual harassment, defamation, slander and libel, punitive damages, and attorneys' fees claims against P&E Logistics Defendants. This case remains open.

> **IT IS SO ORDERED.**

**3/28/2022**                                          **s/Edmund A. Sargus, Jr.**
**DATE**                                                  **EDMUND A. SARGUS, JR.**
                                                              **UNITED STATES DISTRICT JUDGE**

15